Exhibit A

John F. Lomax, Jr.
SNELL & WILMER L.L.P.
One Arizona Center,
400 East Van Buren
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
Email:  jlomax@swlaw.com
*Attorneys for the Fresenius Defendants*

## IN THE DISTRICT COURT OF THE NAVAJO NATION

## FOR THE JUDICIAL DISTRICT OF CHINLE ARIZONA

MARCELLO S. LEE,

        Plaintiff,

v.

DAVITA HEALTHCARE PARTNERS,
INC., TOTAL RENAL CARE HOLDING,
INC., SOUTHWEST KIDNEY-DAVITA
DIALYSIS PARTNERS, LLC, TOTAL
RENAL CARE, INC., FRESENIUS
U.S.A., INC., FRESENIUS SECURITIES,
INC., FRESENIUS HEALTH PARTNERS
CARE SYSTEMS, INC., FRESENIUS
MEDICAL CARE HOLDINGS, INC.,
FRESENIUS U.S.A. SALES, INC.,
FRESENIUS U.S.A.
MANUFACTURING, INC., and CHINLE
DIALYSIS,

        Defendants.

Cause No. CH-CV-133-13

**DECLARATION OF PAUL
COLANTONIO**

I, Paul Colantonio, declare as follows:

1.    I am over the age of 18, and I make this declaration based upon my personal knowledge of the matters set forth below.  If called upon to do so, I could and would testify competently thereto.

2.    I am an Assistant Treasurer with Fresenius U.S.A. Manufacturing, Inc., and I have been with Fresenius U.S.A. Manufacturing, Inc., since 20*ol*.

**FRESENIUS ENTITIES**

3.     Fresenius Medical Care is a leading network of dialysis facilities that provides renal services and is a top producer of dialysis equipment, dialyzers and related disposable products and a major supplier of renal pharmaceuticals.  Accordingly, the divisions of Fresenius Medical Care are separated by those companies providing services and those companies providing products.

4.     Fresenius Medical Care Holdings, Inc. is a New York corporation, and is a parent company with no employees.

5.     Fresenius U.S.A. Manufacturing, Inc. is a Delaware corporation based in Massachusetts which distributes products, including formaldehyde.

6.     Fresenius Securities, Inc. is a California corporation, and does not sell products.

7.     Fresenius  U.S.A., Inc., erroneously sued as Fresenius U.S.A., Sales, Inc., is a Massachusetts corporation acting as a marketing and sales force division of Fresenius Medical Care Holdings, Inc., but does not sell products.

8.     Fresenius Health Partners, Inc., erroneously sued as Fresenius Health Partners Care Systems, Inc., is a Delaware corporation which provides integrated care management services to health plan enrollees, but does not sell products.

9.     Fresenius U.S.A., Inc., Fresenius Securities, Inc., Fresenius Health Partners, Inc., Fresenius Health Partners Care Systems, Inc., Fresenius Medical Care Holdings, Inc., Fresenius U.S.A. Sales, Inc., and Fresenius U.S.A. Manufacturing Inc. will be collectively referred to herein as the "Fresenius Entities."

**BUSINESS ACTIVITY**

10.     None of the Fresenius Entities have consented to the jurisdiction of the Navajo Nation courts.

11.     None of the Fresenius Entities have any contracts, commercial dealings, leases, or other consensual relationships directly with the Navajo Nation.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

12. None of the Fresenius Entities have registered to do business on the Navajo Nation reservation.

13. None of the Fresenius Entities own, operate, or control any facilities or businesses located on the Navajo Nation reservation.

14. None of the Fresenius Entities own, operate, or control any facilities or business in Chinle, Arizona.

15. None of the Fresenius Entities provide any renal services in Chinle, Arizona.

16. None of the Fresenius Entities have sold any products directly to the Navajo Nation.

17. None of the Fresenius Entities have employed any employees on the Navajo Nation reservation.

18. None of the Fresenius Entities own, operate, or control co-defendants DaVita Healthcare Partners, Inc., Total Renal Care Holding, Inc., Southwest Kidney-DaVita Dialysis Partners, LLC, Total Renal Care, Inc., or Chinle Dialysis.

**SALES OF FORMALDEHYDE**

19. On or about August 30, 1999, Fresenius U.S.A., Inc. entered into a Supply Agreement with Total Renal Care, Inc., a California corporation, with its principal office located at 21250 Hawthorne Blvd., Suite 800, Torrance, California 90503-5517.

20. Pursuant to the Supply Agreement, Fresenius U.S.A., Inc. agreed to sell certain Peritoneal Dialysis and Hemodialysis supplies to Total Renal Care, Inc., which eventually became DaVita, Inc. ("DaVita").

21. The Supply Agreement was part of a master agreement between Fresenius and Da Vita which addressed supply orders from DaVita clinics nationwide.

22. Nobody at Total Renal Care, Inc., at the time the parties entered the Supply Agreement, informed any of the Fresenius Entities that Total Renal Care, Inc. (or subsequently DaVita) operated a clinic located within the Navajo Nation reservation or that a DaVita clinic would order products for shipment to the Navajo Nation reservation.

- 3 -

23.     None of the Fresenius Entities had a separate agreement with DaVita specifically for DaVita clinics conducting business in Arizona or within the Navajo Nation reservation.

24.     Between 1999 and 2002, Fresenius U.S.A. Manufacturing, Inc. sold formaldehyde to DaVita, Inc. and shipped those products to a DVA-00638 Chinle Dialysis Facility in Chinle, Arizona.  Attached as Exhibit 1 are true and correct copies of invoices showing the first and last shipments of formaldehyde to Chinle, Arizona.

25.     None of the address labels for any of the invoices or shipping information indicated that Chinle, Arizona was located within the Navajo Nation reservation.

26.     Fresenius U.S.A. Manufacturing, Inc. is the only entity that sold, and received payment for, formaldehyde sales to DaVita, Inc. at Chinle Dialysis in Chinle, Arizona.

27.     Aside from Fresenius U.S.A. Manufacturing, Inc., none of the Fresenius Entities ever sold or delivered any formaldehyde to DaVita, Inc. at Chinle Dialysis in Chinle, Arizona.

28.     None of the Fresenius Entities manufacture formaldehyde.

29.     Since 2002, none of the Fresenius Entities have sold or delivered any products, including formaldehyde, to DaVita, Inc. at Chinle Dialysis in Chinle, Arizona.

30.     None of the Fresenius Entities employed, or had any control over the employment of, Plaintiff Marcello S. Lee.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 21 day of January, 2014.

Paul Colantonio

Paul J. Colantonio
Assistant Treasurer

18322217

# Exhibit B

## IN THE DISTRICT COURT OF THE NAVAJO NATION
## JUDICIAL DISTRICT OF CHINLE, ARIZONA

| | |
|---|---|
| MARCELLO S. LEE )<br>        Plaintiff, )<br> )<br>v. )<br> )<br>DAVITO HEALTHCARE PARTNERS, INC. )<br>TOTAL RENAL CARE HOLDING, INC., )<br>SOUTHWEST KIDNEY-DAVITA DIALYSIS )<br>PARTNERS, LLC, TOTAL RENAL CARE, INC.<br>FRESNIUS U.S.A. INC. FRESENIUS HEALTH<br>PARTNERS CARE SYSTEMS, INC. FRESENIUS<br>MEDICAL CARE HOLDINGS , FRESENIUS U.S.A.<br>MANUFACTURING, INC. AND CHINLE<br>DIALYSIS<br>        Defendant. | No.    CH-CV-133-13<br><br>**ORDER DENYING<br>MOTION TO DISMISS THE<br>AMENDED COMPLAINT<br>AGAINST THE FRESENIUS<br>DEFENDANTS** |

THIS MATTER came before the Court upon Defendant's "Motion to Dismiss the Amended Complaint Against the Fresenius Defendants". The Court informed the parties that it would hear the motion on February 26, 2015 and they were allowed to bring witnesses and present evidence at the hearing. The parties appeared on February 26, 2015, though counsel, but chose to make only oral arguments. The Court, being informed in the premises, hereby FINDS:

Issues of jurisdiction both particularly subject matter jurisdiction are of particular complexity on Indian reservations. As a court of general jurisdiction and not limited jurisdiction like federal courts, there is a presumption that this Court has jurisdiction over all actions brought before it. However, this presumption must be reconciled by limitations impose upon tribal courts by federal court decisions.  In applying those limitations the

Court is only bound by the Navajo Nation Supreme Court's interpretation of federal law and United States Supreme Court's interpretations of federal law.

The Court hoped that the parties would elaborate on their views of subject matter jurisdiction and the federal Indian law cases addressing jurisdiction under the facts of the case. The Court hoped that witnesses would be called to establish jurisdictional facts to help the Court properly apply the correct legal standard. This was not done and the entire argument consisted of arguing whether personal jurisdictional exists in this case and a brief discussion of the Navajo Nation long-armed statute.

The Court must address the subject matter jurisdiction issue on the basis of facts asserted in the Amended Complaint and on other filings before the Court. Unfortunately, neither party has told the Court whether the Chinle Dialysis Center is on trust land. The Plaintiff has requested that the Court take judicial notice that Chinle is in the heart of the Navajo Nation and virtually all the land within the Navajo Nation is either trust or tribally owned fee land. The Court will take judicial notice of this fact since Defendants have not asserted that Chinle Dialysis is on non-Indian Fee land which would compel under *Montana v. United States,* 450 U.S. 544, 566 (1981) an analysis whether the dispute satisfied  a *Montana* exception.

This Court finds that *Nelson v. Pfizer*, 8 Nav. R. 369, 376 (Nav. Sup Ct. 2003) is binding precedent. *Nelson* refused to require a showing of the existence of a *Montana* exception in cases where the land was not non-Indian fee land.  While the Court is not satisfied with the efforts made by the Parties to inform the Court of jurisdictional facts in this case, it will not require additional hearings on subject matter jurisdiction. This is compelled by the deteriorating health of the Plaintiff in this matter.

2

Having addressed subject matter jurisdiction, the Court turns to the long-armed statute which has elements of both personal and subject matter jurisdiction. Defendant's basic argument before the Court is 7 N.N.C. §253 does not apply because the Defendant has not committed harm within the Navajo Nation. At oral argument, Plaintiff argued that Navajo tradition required that the jury decide the jurisdictional issue. The Court rejects both arguments. Jurisdictional decisions clearly belong to the Court not the jury. The Defendant has alleged that the Plaintiff(s) has caused an injury and this remains a disputed fact is this case not resolvable under either the motion to dismiss or the summary judgment standard.  A mere allegation by the Defendant that the formaldehyde was not manufactured in a deficient manner is not sufficient to escape jurisdiction. This is particularly true since under Count II, ¶ 32 of the Amended Complaint asserts that there was a failure to "give adequate warnings and/or instructions". Thus, even if manufactured correctly such a claim, if true, could be sufficient to prevail in a products liability case.

The final analysis needed in this case is whether minimum contacts exist which under due process are necessary to assert jurisdiction over the Defendant. Defendant asserts that *Sells v. Espil*, No. A-CV-15-89, (Nav. Sup. Ct. 1990) mandates that the substantial contacts standard applies and under that standard personal jurisdiction does not exist. The Court agrees that if the substantial contacts standard did apply, jurisdiction would not exist. However, the contacts here clearly relate to the dispute. It is the actually delivery of the formaldehyde to the Navajo Nation by the Defendant and the contract that existed between the Defendant and an entity doing business on the Navajo Nation that is alleged to have caused the harm. Thus, minimum contacts do exist. The Court finds that it was reasonable foreseeable to the Defendant that the actual delivery of a potentially defective

3

product could have caused it to have to appear for a Navajo tribunal. Finally, the burden on the very ill Plaintiff to appear in another forum compared to the burden on the Defendant to appear supports jurisdiction in this forum.

The Parties have stipulated to dismiss all of the Fresenius defendants except for Fresenius U.S.A. Manufacturing, Inc. which is being addressed by this order.

IT IS ORDERED that the Motion to Dismiss the Amended Complaint Against the Fresenius U.S.A. Manufacturing, Inc.  is **DENIED.**

IT IS FURTHER ORDERED that the remaining Fresenius Defendants are dismissed pursuant to the stipulation.

**SO ORDERED** this _/2_ day of March, 2015.

Honorable Rudy I. Bedonie
DISTRICT COURT JUDGE

I HEREBY CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE INSTRUMENT ON FILE
IN THE CHINLE DISTRICT COURT.

3.12.15
COURT CLERK

4

NO: CH-CV-133-13

\* \* \* \* \* \* \* \* \* \* \* \* \* \* CERTIFICATE OF SERVICE \* \* \* \* \* \* \* \* \* \* \*

I have on this **12**[th] day of **MARCH, 2015,** mailed a true certified copy of the <u>ORDER DENYING</u>
<u>MOTION TO DISMISS THE AMENDED COMPLAINT AGAINST THE FRESENIUS</u>
<u>DEFENDANTS</u> to the following parties on record via U.S. Postal Mail.

Paul Barber, *Attorney for Plaintiff*
Forrest G. Buffington, *Attorney for Plaintiff*
BARBER & BORG, LLC
P.O. Box 30745
Albuquerque, New Mexico 87190

Brett R. Rigg, *Attorney for Defendants*
THE RIGG LAW FIRM, P.L.L.C.
377 E. White Mountain Blvd.
Pinetop, Arizona 85935

Carol Romano, *Pro Hac Vice for Defendants*
Kelli K. Williams, *Pro Hac Vice for Defendants*
RENAUD, COOK, DRURY, MESAROS, PA
One N. Central, Suite 900
Phoenix, Arizona 85004

John F. Lomax, Jr., *Attorney for Defendants (Fresenius)*
Christopher Deschene, *Attorney for Defendants (Fresenius)*
Robert Feinberg, *Pro Hac Vice for Defendants (Fresenius)*
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

Valerie Descheny, District Court Clerk
District Court of the Navajo Nation

1



THE NAVAJO NATION
Chinle Judicial District
District Court / Family Court
Probation & Peacemaking
Post Office Box 547
Chinle, Arizona 86503

PHOENIX
AZ 852
17 MAR '15
PM 5 L





US POSTAGE
$ 00.69
First-Class
Mailed From 85003

John F. Lomax, Jr., *Attorney*
Christopher Deschene, *Attorney*
Robert Feinberg, *Pro Hac Vice*
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

85004220250

Exhibit C

Trial Court No. CH-CV-133-13

IN THE SUPREME COURT OF THE NAVAJO NATION

FRESENIUS U.S.A. MANUFACTURING, INC.,
Petitioner,

v.

JUDGE RUDY BEDONIE,
District Court Judge in Chinle District Court,
Respondent,

and

MARCELLO S. LEE
and
DAVITA HEALTHCARE PARTNERS, INC., TOTAL RENAL CARE HOLDING, INC.,
SOUTHWEST KIDNEY-DAVITA DIALYSIS PARTNERS, LLC, TOTAL RENAL CARE,
INC., and CHINLE DIALYSIS,
Respondents/Real Parties in Interest.

**PETITIONER FRESENIUS U.S.A. MANUFACTURING, INC.'S
PETITION FOR WRIT OF PROHIBITION**

John F. Lomax, Jr. (AZ Bar No. 020224)
Robert Feinberg (admitted *pro hac vice*)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
Email: jlomax@swlaw.com
        rfeinberg@swlaw.com
Attorneys for Defendant/Petitioner
Fresenius U.S.A. Manufacturing, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS ................................................................................................ 2

    Procedural History ..................................................................................................... 2

    Factual Background ................................................................................................... 3

STATEMENT OF ISSUES PRESENTED ........................................................................ 6

    A.    Whether the Chinle District Court erred in determining subject matter jurisdiction over the claims against Fresenius by only applying *Nelson v. Pfizer* when the Navajo Supreme Court has modified the *Nelson* standards? ........................................ 6

    B.    Whether the Chinle District Court's assertion of personal jurisdiction over Fresenius contradicts Navajo and federal law concepts of the due process? ................................... 6

ARGUMENT ................................................................................................................... 6

    A.    The Chinle District Court Does Not Have Subject Matter Jurisdiction Over the Claims Against Fresenius under Either Navajo or Federal Law ................................................. 6

    B.    The Chinle District Court Does Not Have Personal Jurisdiction Over Fresenius under Either Navajo or Federal Law ............................................................................. 11

RELIEF SOUGHT ......................................................................................................... 16

CERTIFICATE OF SERVICE ....................................................................................... 17

## TABLE OF AUTHORITIES

**Federal Cases**

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) ......................................15

*Atkinson Trading Co. v. Shirley*, 532 U.S. 645 (2001)..............................................9, 10

*Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059 (9th Cir. 1999) .......................10, 11

*County of Lewis v. Allen*, 163 F.3d 509 (9th Cir. 1998) .....................................................10

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996)..............14

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)....................................13, 14

*J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011)..........................14, 15

*Montana v. United States*, 450 U.S. 544 (1981)......................................................... passim

*Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316 (2008).....................10

*Strate v. A-1 Contractors*, 520 U.S. 438 (1997) ...................................................10, 11

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..................................14

**Navajo Cases**

*Cabinets Southwest, Inc. v. Navajo Nation Labor Comm'n*, 8 Nav. R. 435 (Nav. Sup. Ct. 2004) .2

*Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417 (Nav. Sup. Ct. 2004)...........................................4

*EXC, Inc. v. Kayenta District Court*, Nav. SC-CV-07-10 (Nav. Sup. Ct. Sept. 15, 2010) ..7, 8, 10, 12

*Ford Motor Company v. Kayenta District Court*, Nav. SC-CV-33-07 (Nav. Sup. Ct. Dec. 18, 2008)...............................................................................................................................13

*John Doe BF v. Diocese of Gallup, et al.*, Nav. SC-CV-06-10 (Nav. Sup. Ct. Sept. 9, 2011)....7, 8

*McCabe v. Walters*, 5 Nav. R. 43 (Nav. Ct. App. 1985) .............................................1, 15

*Nelson v. Pfizer, Inc.*, 8 Nav. R. 369 (Nav. Sup. Ct. 2003) .................................... passim

*Neptune Leasing, Inc. v. Mountain States Petroleum Corporation and Nacogdoches Oil and Gas, Inc.*, Nav. SC-CV-24-10 (Nav. Sup. Ct. May 13, 2013) .....................................7, 13

*Yazzie v. Yazzie*, 5 Nav. R. 66 (Nav. Sup. Ct. 1985) ...............................................................6

*Yellowhorse, Inc. v. The Window Rock Dist. Ct.*, 5 Nav. R. 85 (Nav. Sup. Ct. 1986). ...................2

**Statutes**

7 N.N.C. § 253(a) ...........................................................................................................11

7 N.N.C. § 253a(C).........................................................................................................12

7 N.N.C. § 302 .................................................................................................................1

7 N.N.C. § 303 .................................................................................................................1

Diné Fundamental Law, 1 N.N.C. §§ 202-206..................................................................11, 12

Navajo Nation Bill of Rights, 1 N.N.C. §§ 1-7 ...............................................................11, 12

**Rules**

Navajo Rules of Civil Appellate Procedure, Rule 26(a)...................................................1

Navajo Rules of Evidence, Rule 5 ...............................................................................5, 9

Pursuant to Rule 26(a) of the Navajo Rules of Civil Appellate Procedure and 7 N.N.C. §§ 302-303, Defendant Fresenius U.S.A. Manufacturing, Inc. ("Fresenius") petitions this court for a writ of prohibition barring the Chinle District Court from proceeding with the claims against Fresenius in case number CH-CV-133-13. The action alleges claims of negligence, strict liability, and Navajo common law brought against Fresenius and a group of DaVita entities by Marcelo S. Lee. Mr. Lee worked at Chinle Dialysis, operated by DaVita HealthCare Partners, Inc., Total Renal Care Holding, Inc., Southwest Kidney-Davita Dialysis Partners, LLC, and Total Renal Care, Inc. (collectively, the "DaVita entities").[1] Between 1999 and 2002, Fresenius sold formaldehyde to DaVita, Inc. and shipped it to Chinle Dialysis.

The basis of Fresenius's petition is that the Navajo Nation courts, including the Chinle District Court, lack subject matter jurisdiction over Mr. Lee's claims. *McCabe v. Walters*, 5 Nav. R. 43, 47 (Nav. Ct. App. 1985) (writ of prohibition proper where "a trial court [is] acting beyond its jurisdiction"). This petition will explain the facts giving rise to the petition and its procedural history. It will then explain why, under Navajo and federal law, the Navajo Nation courts lack personal or subject matter jurisdiction over the action.[2]

Since the Courts of the Navajo Nation lack subject matter jurisdiction over Mr. Lee's action against Fresenius, this court should issue a writ of prohibition barring the Chinle District Court from adjudicating Mr. Lee's claims against Fresenius. While a "writ of prohibition is an extraordinary remedy which ... will [be] grant[ed] only in rare cases showing absolute

---

[1]     Fresenius is unrelated to the DaVita entities. Fresenius does not own, operate, or control any of the DaVita entities; instead, Fresenius has simply engaged in prior business transactions with the DaVita entities. Exhibit 2 at 28-29.

[2]     Accompanying this writ petition is a separate volume of consecutively numbered exhibits to supply this Court with the record. References to the exhibits will be to "Exhibit ___ at ___." where the page number is to the consecutive number, not the number, if any, that was originally on the exhibit. The exhibits consist of i) Mr. Lee's First Amended Complaint filed in the Chinle District Court, ii) Fresenius's Motion to Dismiss, iii) Mr. Lee's Response to the Motion to Dismiss, iv) Fresenius's Reply to the Motion to Dismiss, v) the transcript of the hearing before Judge Bedonie regarding Fresenius's Motion to Dismiss, vi) the order challenged by this petition, vii) Mr. Lee's written discovery requests through March 1, 2015, and viii) the notice of jury trial. If this Court believes that it needs any additional materials from the underlying proceedings to assess Fresenius's writ petition properly, Fresenius will supply them promptly upon request.

necessity," this is such a case. *Yellowhorse, Inc. v. The Window Rock Dist. Ct.*, 5 Nav. R. 85, 86 (Nav. Sup. Ct. 1986). The writ is proper upon a showing that "(1) the lower court is about to exercise judicial power; (2) the exercise of such power by the lower court is not authorized by law; and (3) the exercise of such power will result in injury, loss or damage for which there is no plain, speedy and adequate remedy at law." *Id.*; *see also Cabinets Southwest, Inc. v. Navajo Nation Labor Comm'n*, 8 Nav. R. 435, 446 (Nav. Sup. Ct. 2004) (writ of prohibition will issue "for defects in jurisdiction of a court or administrative body"). In Mr. Lee's case, the Chinle District Court has exercised jurisdiction, which exceeds its authority and which Fresenius otherwise would not be able to challenge until after the parties had incurred the expense of a full trial on the merits.

The District Court has ordered jury trial in this matter to begin on June 16, 2015. Exhibit 8 at 126.

## STATEMENT OF FACTS

### Procedural History

Mr. Lee filed an unsafe workplace negligence and strict liability action against Fresenius and the DaVita entities on September 24, 2013 in the Chinle District Court, as Case No. CH-CV-133-13. He filed his First Amended Complaint on February 4, 2014. Exhibit 1. The action stems from Mr. Lee's work as an employee at a kidney dialysis facility, Chinle Dialysis. Exhibit 1 at 3. Fresenius allegedly sold formaldehyde to Chinle Dialysis. *Id.* When working at Chinle Dialysis, Mr. Lee allegedly worked with formaldehyde. *Id.* Mr. Lee claims that the workplace was unsafe, and his exposure to formaldehyde caused multiple myeloma. Exhibit 1 at 4. He also claims that Fresenius failed to give adequate warnings regarding the dangerous nature of the chemical, and that it allowed defectively designed and manufactured chemicals into the stream of commerce. Exhibit 1 at 4-6.

On March 12, 2015, the Chinle District Court (Hon. Rudy I. Bedonie) issued an order denying Fresenius's motion to dismiss for lack of personal or subject matter jurisdiction. Exhibit 6. The court ruled that it had subject matter jurisdiction under *Nelson v. Pfizer, Inc.*, 8 Nav. R.

369 (Nav. Sup. Ct. 2003), as *Nelson* ruled that no *Montana* exception was needed if the land was either tribal trust land or Indian-owned fee land, and Fresenius had not argued that Chinle Dialysis was on non-Indian fee land. Exhibit 6 at 112. The Court also concluded that a showing of minimum contacts was met, as the contacts related directly to the dispute. Exhibit 6 at 113. The Court determined the contract between Fresenius and DaVita, along with the actual delivery of formaldehyde to Chinle Dialysis, was sufficient for personal jurisdiction. *Id.* Judge Bedonie also found that the "burden on the very ill Plaintiff to appear in another forum compared to the burden on the Defendant to appears supports jurisdiction in this forum."[3] Exhibit 6 at 114.

### Factual Background

This lawsuit involves alleged injuries purportedly suffered at Mr. Lee's workplace where he worked with chemicals, including formaldehyde, to disinfect artificial kidneys and other instruments at Chinle Dialysis. Exhibit 1 at 3. Mr. Lee incorrectly alleges that Petitioner Fresenius manufactured the formaldehyde and negligently caused him to be exposed to a defective product, causing his multiple myeloma. Exhibit 1 at 3-4. Mr. Lee, however, has not marshalled any evidence to demonstrate that Fresenius manufactured formaldehyde, provided a defective product, or had control over his workplace exposure to chemicals.

On or about August 30, 1999, Fresenius entered into a Supply Agreement with Total Renal Care, Inc., a California corporation, with its principal office located at 21250 Hawthorne Blvd., Suite 800, Torrance, California 90503-5517. Exhibit 2 at 28. Pursuant to the Supply Agreement, Fresenius agreed to sell certain medical supplies to Total Renal Care, Inc., which eventually became DaVita, Inc. *Id.* DaVita, Inc. is a separate company from Fresenius, and Fresenius does not own, operate, or control any of the DaVita entities. *Id.*

---

[3]  Although Petitioner sympathizes with Mr. Lee's illness, a plaintiff's health is not a factor in jurisdictional questions. Fresenius has not caused delays to lengthen the process, and instead has worked to resolve the claims in an expeditious manner. Petitioner filed its Motion to Dismiss on January 30, 2014, the briefing was completed by April 11, 2014, but no hearing on the motion was held until February 26, 2015.

Between 1999 and 2002, Fresenius sold products, including formaldehyde, to DaVita, Inc., and shipped those products to the Chinle Dialysis Facility in Chinle, Arizona. Exhibit 2 at 29, 31-32. As the distribution arm, Fresenius was the only Fresenius entity that sold or received payment for formaldehyde sales to DaVita, Inc. at Chinle Dialysis. Exhibit 2 at 29. Fresenius stopped selling or delivering any products, including formaldehyde, to Chinle Dialysis in 2002, and has not sold or delivered any products, including formaldehyde, to Chinle Dialysis since that time. *Id.*

In its order, the District Court was troubled by the lack of jurisdictional facts presented during the hearing regarding the character of the land, leaving it unable to appropriately determine the correct legal standard. Exhibit 6 at 111-112. Fresenius, however, presented facts in its Motion to Dismiss contesting Mr. Lee's allegations in his complaint that the Navajo courts had jurisdiction of the matter. Exhibit 2 at 10-12. Under Navajo law, this means the defendant has made a factual challenge to jurisdiction by "presenting contradictory evidence." *Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 424 (Nav. Sup. Ct. 2004). Upon submission of contradictory evidence, "the court weighs the evidence on both sides and makes findings of fact as it would in the merits phase of the case." *Id.* The burden is on the plaintiff to "prove the necessary facts for jurisdiction by a preponderance of the evidence." *Id.*

Despite this requirement, Mr. Lee did not present <u>any</u> evidence supporting the Navajo courts' jurisdiction over the claims against Fresenius. He failed to meet his burden under *Dale Nicholson*. Indeed, Fresenius timely responded to all discovery requests served upon it. Mr. Lee's written discovery requests never sought any information from Fresenius on jurisdictional facts.[4] Exhibit 7. Despite Mr. Lee's repeated requests to DaVita to speed up the discovery process and receive information from DaVita, none of these requests focused on information necessary for the basic proof of jurisdiction. *Id.* When Fresenius's attorneys explained that discovery was irrelevant until jurisdiction was demonstrated, Mr. Lee's counsel made no

---

[4]     Mr. Lee initially appeared interested in taking a 30(b)(4) deposition of Fresenius, but ultimately decided not to go forward with the deposition.

additional efforts to prove jurisdiction was appropriate in the Navajo courts. Instead, in his brief, he simply asked that the court take judicial notice that most of the land in the Navajo Nation is either trust land or tribally owned fee land.[5] Exhibit 3 at 34-35. Under the Navajo Rules of Evidence, judicial notice is only allowed for adjudicative facts, not facts which are "subject to reasonable dispute." N.R.E. Rule 5. Given the difficulty of title searches for allotments and islands of fee lands, Fresenius respectfully submits that the character of the land is rarely, if ever, not subject to reasonable dispute. Here, the actual nature of the land at issue is unknown. While much of the land in the Navajo Nation may be either tribal trust land or Indian-owned fee land, there is no evidence on point in this case. Despite nearly a year of discovery, Mr. Lee did not present the required evidence to show that Chinle Dialysis was on tribal trust land. The Court should not have taken judicial notice of this fact, and instead should have weighed the evidence to determine jurisdiction, as required under Navajo law.

Even if the land was ultimately found to be tribal trust or Navajo-owned land, there are numerous uncontested facts weighing against both subject matter and personal jurisdiction not mentioned in the Court's order. Fresenius does not have a business presence on the Navajo Nation reservation or any relationship to the Navajo Nation. It has not registered to do business on the Navajo Nation reservation. Exhibit 2 at 28. Fresenius does not own, operate, or control any facilities or businesses located on the Navajo Nation reservation. *Id.* Fresenius has not consented to the jurisdiction of the Navajo Nation's courts. Exhibit 2 at 27. Fresenius does not have any contracts, commercial dealings, leases, or other consensual relationships directly with the Navajo Nation. *Id.* Most importantly, Fresenius did not sell its products directly to the Navajo Nation, or even a member of the Navajo Nation. Exhibit 2 at 28.

Fresenius also has no relationship with Mr. Lee. Fresenius does not own, operate, or control any facilities or businesses in Chinle, Arizona, including Mr. Lee's former place of employment, Chinle Dialysis. *Id.* Fresenius did not employ, or have any control over the

---

[5]     The transcript confirms that the issue of the character of the land -- whether Chinle Dialysis is on tribal trust or fee land -- was not discussed at the hearing. Exhibit 5.

employment of, Mr. Lee. Exhibit 2 at 29. Fresenius also does not provide any renal services in Chinle, Arizona. Exhibit 2 at 28.

Each of the above points was submitted to the Court as evidence; none of the evidence was rebutted. Unfortunately, none of it was mentioned in the Court's order. If the Court had weighed this evidence, comparing it to Mr. Lee's lack of evidence supporting jurisdiction, it should have determined that the Navajo courts do not have jurisdiction over the claims against Fresenius.

## STATEMENT OF ISSUES PRESENTED

A.     Whether the Chinle District Court erred in determining subject matter jurisdiction over the claims against Fresenius by only applying *Nelson v. Pfizer* when the Navajo Supreme Court has modified the *Nelson* standards?

B.     Whether the Chinle District Court's assertion of personal jurisdiction over Fresenius contradicts Navajo and federal law concepts of the due process?

## ARGUMENT

Just like all other courts, the Navajo Nation court system "must have both subject matter jurisdiction and personal jurisdiction to properly hear a case." *Yazzie v. Yazzie*, 5 Nav. R. 66, 68 (Nav. Sup. Ct. 1985). Unfortunately, neither type of jurisdiction exists here. Despite numerous pleadings and oral arguments on the issue, the only allegation to support either personal or subject matter jurisdiction in the Navajo Nation courts over Fresenius is that Fresenius delivered formaldehyde to Chinle Dialysis. While Fresenius shipped this product to Chinle Dialysis, this conduct does not subject Fresenius to the jurisdiction of the Chinle District Court under either Navajo or federal law. Accordingly, Fresenius should be dismissed for lack of both subject matter and personal jurisdiction.

A.     **The Chinle District Court Does Not Have Subject Matter Jurisdiction Over the Claims Against Fresenius under Either Navajo or Federal Law.**

1. <u>Fresenius Did Not Cause an Injury to Occur within the Navajo Nation, as Required for Subject Matter Jurisdiction under Navajo Law.</u>

The District Court determined it had subject matter jurisdiction over the claims against Fresenius because of this Court's ruling in *Nelson v. Pfizer, Inc.*, 8 Nav. R. 369 (Nav. Sup. Ct. 2003). In *Nelson*, this Court broadly defined subject matter jurisdiction for the Navajo courts, determining that they need not consider the *Montana* exceptions where the non-Indian activity at issue occurred on tribal land. *Nelson*, 8 Nav. R. at 376. Since that ruling, however, this Court has reexamined the issue of subject matter jurisdiction.

In *EXC, Inc. v. Kayenta District Court*, Nav. SC-CV-07-10, slip op. at 11 (Nav. Sup. Ct. Sept. 15, 2010), this Court ruled that fundamental fairness in determining jurisdiction requires the Court to "weigh the facts of each case rather than mechanically apply a formulaic test." In that case, the Court determined jurisdiction was appropriate, as the petitioners had a direct business presence in the Navajo Nation. As a result, "[p]etitioners knew or should have known that their activities would subject them to Navajo Nation jurisdiction over their … activities." *Id.*

This Court also modified *Nelson* in *John Doe BF v. Diocese of Gallup, et al.*, Nav. SC-CV-06-10, slip op. at 8 (Nav. Sup. Ct. Sept. 9, 2011), as *Nelson* had made the *Montana* inquiry discretionary when the case involved non-members on trust land. Instead, in *Diocese of Gallup*, this Court ruled that "[w]here jurisdiction is disputed, detailed factual findings and legal conclusions under all relevant laws are required, without exception, in civil proceedings concerning non-member defendants." *Id.* This approach was reiterated in *Neptune Leasing, Inc. v. Mountain States Petroleum Corporation and Nacogdoches Oil and Gas, Inc.*, Nav. SC-CV-24-10, slip op. at 6 (Nav. Sup. Ct. May 13, 2013), where this Court stated, "[a]n analysis of jurisdictional basis under all relevant laws . . . shall be required of our district courts regardless of the land status where the action arose." *Neptune Leasing, Inc.* (citing *Diocese of Gallup*, slip op. at 8).

As a result, Navajo courts must now analyze all the facts regarding jurisdiction under both Navajo <u>and</u> federal laws to determine whether jurisdiction is appropriate over non-member

defendants.

In this case, the District Court made no such inquiry into the facts or legal conclusions underlying Mr. Lee's assertion of jurisdiction. If it had, the Court would have determined that subject matter jurisdiction was not appropriate under Navajo law. Unlike the direct link between the defendant and the Navajo Nation discussed in *EXC*, Fresenius had no direct business presence in the Navajo Nation. Fresenius merely delivered the formaldehyde to the Chinle Dialysis facility. Exhibit 2 at 27-29. Fresenius does not own, operate, or control DaVita or any clinics located on the Navajo Nation reservation. Exhibit 2 at 28. Instead, Mr. Lee's claims all return to the allegation that he was exposed to a dangerous chemical in his work environment. Exhibit 1 at 3-4. Notably, Fresenius did not employ Mr. Lee and had absolutely no control over his employment and exposure (if any) to any products or chemicals. Exhibit 2 at 29. Moreover, it is not clear whether other suppliers sold formaldehyde to the Chinle clinic at the same time. Thus, Fresenius's actions do not correlate to a "direct business presence," so Fresenius should not have known its actions would subject it to Navajo jurisdiction. Additionally, under the *Diocese of Gallup* analysis requirements, subject matter jurisdiction is not available under either *Montana* exception, as discussed in more detail below.

Even if this Court applies the *Nelson* analysis, the case is not applicable to the claims against Fresenius. While *Nelson* expresses a broad view of Navajo jurisdiction, that case involved an alleged defective pharmaceutical product consumed by Navajo members. In *Nelson*, prescriptions for the drug were issued within the Navajo Nation, the drug was provided by a pharmacy within the Navajo Nation, and some of the plaintiffs ingested the drug within the Navajo Nation. 8 Nav. R. at 373. No such facts are present here. Mr. Lee did not consume a defective product, and the orders for the product occurred outside the Navajo Nation. Fresenius only delivered formaldehyde to the DaVita entities at Chinle, Arizona. There are no allegations that Mr. Lee was the consumer of a defective product, but rather, his allegations are that his employer, DaVita, unreasonably exposed him to formaldehyde under unsafe conditions. Exhibit 1 at 3-4. Thus, it cannot be said that Fresenius engaged in non-Indian activity on tribal land that

8

caused harm to Mr. Lee, as the court found in *Nelson*. Instead, the alleged harm was caused by Mr. Lee's and/or DaVita's use of formaldehyde or the environment in which he operated, not Fresenius.

As mentioned in the Statement of Facts above, Mr. Lee never conducted discovery on whether Chinle Dialysis is on tribal trust land or fee land. A plaintiff has the burden to demonstrate jurisdiction is appropriate, and the character of the land is not a fact appropriate for judicial notice under N.R.E. 5. As a result, based on this Court's recent approach to subject matter jurisdiction and the lack of evidence demonstrating jurisdiction, the Navajo courts do not have such jurisdiction over the claims against Fresenius.

      2.     <u>Subject Matter Jurisdiction is Not Available Under Federal Law, as There are No Applicable *Montana* Exceptions.</u>

Turning to federal law, Fresenius is not subject to subject matter jurisdiction under the *Montana* exceptions. Under the first *Montana* exception, a "tribe may regulate the activities of nonmembers who enter consensual relationships <u>with the tribe or its members</u>, through commercial dealing, contracts, leases, or other arrangements." *Montana v. United States,* 450 U.S. 544, 566 (1981) (emphasis added). Here, the <u>only</u> consensual relationship that Mr. Lee can demonstrate is Fresenius's consent to do business with DaVita. This is insufficient under *Montana* .

The consensual relationship under *Montana's* first exception requires that Fresenius's alleged conduct "have a nexus to the consensual relationship itself." *Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 656 (2001). While Fresenius had a contractual relationship with DaVita, Mr. Lee is trying to bootstrap this relationship to show that Fresenius therefore had a relationship with the Navajo Nation, yet this analogy goes one step too far. By contracting with DaVita, Fresenius did not automatically enter into a consensual relationship with the Navajo Nation or with Mr. Lee. Fresenius had no relationship with Mr. Lee. Exhibit 2 at 29. Fresenius has not consented to the jurisdiction of the Navajo Nation courts; does not have any contracts or other

commercial dealings with the Navajo Nation; and does not own, operate, or control any businesses on the Navajo Nation reservation. Exhibit 2 at 27-28. Indeed, Fresenius does not even manufacture the formaldehyde at issue; it is merely a supplier. Exhibit 2 at 29. This relationship between Fresenius and DaVita is not sufficient to trigger jurisdiction under the first *Montana* exception.[6]

As for the second *Montana* exception, it requires the non-Indian activity have a "direct effect" on the Navajo Nation. *Nelson*, 8 Nav. R. at 375. Under this exception, jurisdiction is proper only where "necessary to protect tribal self-government or to control internal relations." *Id.* (citation omitted). The nonmember defendant's alleged conduct "must do more than injure the tribe[;] it must 'imperil the subsistence' of the tribal community." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 341 (2008) (citation omitted); *Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999) ("A nonmember's impact must be 'demonstrably serious.'").[7]

Mr. Lee has alleged that certain conduct caused his injury and affected "the health, welfare and safety of members of the Navajo Nation." Exhibit 1 at 2. However, the only alleged injury is that Mr. Lee was exposed to formaldehyde. But these allegations cannot satisfy the second *Montana* exception. Virtually every event that occurs in the Navajo Nation could technically have a political, health, or welfare ramification to the Nation; therefore, it is not enough to simply argue that the exception applies because the tribe has an interest in its

---

[6]     Even if the Court determines that this relationship meets the requirements of the first *Montana* exception, this would still be insufficient to allow jurisdiction. "A nonmember's consensual relationship in one area ... does not trigger tribal civil authority in another--it is not 'in for a penny, in for a Pound.'" *Atkinson Trading Co.*, 532 U.S. at 656 (citation omitted); *see also, Strate v. A-1 Contractors*, 520 U.S. 438, 456-457 (1997) (concluding that tribal court lacked subject matter jurisdiction over nonmember defendant even though nonmember defendant was engaged in subcontract work for the tribe on the reservation at the time because plaintiff "was not a party to the subcontract, and the Tribes were strangers to the accident"). Accordingly, Fresenius's contractual relationship with DaVita cannot trigger civil liability to Mr. Lee, with whom Fresenius has no relationship.

[7]     Petitioner Fresenius recognizes the Navajo Supreme Court has interpreted this second exception under *Montana* differently, *e.g.*, *EXC, Inc. v. Kayenta Dist. Ct.*, SC-CV-07-10 (Nav. Sup. Ct. Sept. 15, 2010), but presents this argument under federal law.

members' safety. *See County of Lewis v. Allen*, 163 F.3d 509, 515 (9th Cir. 1998).

The mere fact that the alleged injury occurred to a single tribal member on the reservation is also not sufficient to trigger this exception. *See Strate*, 520 U.S. at 458 ("But if *Montana's* second exception requires no more [than merely jeopardizing the safety of tribal members], the exception would severely shrink the rule."). And, because "the possibility of injuring multiple tribal members does not satisfy the second *Montana* exception under *Strate*, then, perforce, [a plaintiff's] statement as a tribal member alone cannot." *Burlington N. R.R. Co.*, 196 F.3d at 1065.

Mr. Lee alleges a single harm to himself: that he developed multiple myeloma purportedly from his exposure to formaldehyde. Exhibit 1 at 4. Requiring Fresenius to defend against these claims "in an unfamiliar court" is "not necessary to protect tribal self-government . . . [and] is not crucial to 'the political integrity, the economic security, or the health or welfare of the [Navajo Nation].'" *Strate*, 520 U.S. at 458 (quoting *Montana*, 450 U.S. at 566). Indeed, Mr. Lee may still "pursue h[is] case against [Fresenius] in the state forum open to all who sustain injuries" in that jurisdiction. *Strate*, 520 U.S. at 458. Accordingly, the second *Montana* exception does not apply either, and therefore the Navajo courts lack subject matter jurisdiction over Mr. Lee's claims against Fresenius.

B.    **The Chinle District Court Does Not Have Personal Jurisdiction Over Fresenius under Either Navajo or Federal Law.**

1.    Fresenius Does Not Have Sufficient Contacts with the Navajo Nation to Create Personal Jurisdiction Under Navajo Law.

In his Response to the Motion to Dismiss, Mr. Lee argued that jurisdiction should exist because the Navajo Nation's right to protect its citizens is recognized by the Navajo Nation Bill of Rights (1 N.N.C. §§ 1-7), Diné Fundamental Law (1 N.N.C. §§ 202-206), and the jurisdictional laws in the Navajo Nation Code (7 N.N.C. §§ 253, 253(a)). Exhibit 4 at 35-36. Fresenius does not dispute that the Navajo Nation has the right to protect its citizens. However, this right does not mean that jurisdiction exists in all cases.

11

Moreover, the sections of the Navajo Nation Code that Mr. Lee cited do not provide that a Navajo court may exert jurisdiction over a non-member defendant who simply delivered a product to a clinic on the Navajo Nation. Indeed, the Navajo Nation Bill of Rights, 1 N.N.C. §§ 1-7, addresses issues such as equality of rights, equal protection, due process, freedom of religion, speech, and press, right of assembly and petition, searches and seizures, right to bear arms, rights of the criminally accused, deprivation of property, and cruel and unusual punishment. Further, Diné Fundamental Law, 1 N.N.C. §§ 202-206, addresses the collective rights and freedoms of the people of the Navajo Nation. At best, those are weak arguments, unmoored to the facts of this case to justify personal jurisdiction.

Under the Navajo long-arm statute, the Navajo courts may exercise personal jurisdiction over a person as to a cause of action for relief arising from, among other events, that person's business in the Navajo Nation, contracting to supply services or things within the Navajo Nation, or any action/inaction outside the jurisdiction which causes reasonably foreseeable injury or damage within the Navajo Nation. 7 N.N.C. § 253a(C). The first portion of the statute arguably applies to Fresenius, as Fresenius agreed to "supply things" that, while Fresenius may not have realized it, the product ultimately entered the Navajo Nation. While Fresenius did not do business directly with the Navajo Nation, it did send products to the DaVita entities in Chinle. However, it was not "reasonably foreseeable" that harm would result from these actions, as required under the long-arm statute. Any injury to Mr. Lee resulting from his work at the dialysis facility was not reasonably foreseeable to Fresenius, as the company merely supplied a product to Chinle Dialysis. Fresenius had no control over the working conditions for Mr. Lee or the use of the formaldehyde. As a result, the Navajo long-arm statute does not provide for personal jurisdiction in the Navajo courts.

Additionally, Fresenius did not have sufficient contacts with the Navajo Nation to allow the courts to exercise personal jurisdiction. Under Navajo law, the exercise of jurisdiction must not violate notions of due process, fundamental fairness, and the value of k'é. *EXC, Inc. v. Kayenta District Court*, Nav. SC-CV-07-10, slip op. at 11 (Nav. Sup. Ct. Sept. 15, 2010). As the

Court noted in *Ford Motor Company v. Kayenta District Court*, Nav. SC-CV-33-07, slip op. at 8 (Nav. Sup. Ct. Dec. 18, 2008), this means the Court should use the "minimum contacts" test under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) to determine whether the courts have personal jurisdiction over the action.

By finding sufficient contacts here, the Court would be undermining its past decisions on personal jurisdiction. In *Ford Motor Company*, the Court found sufficient contacts where the company had knowledge that its products were sold to the Navajo Nation government, financed the sale of these government vehicles through a Ford subsidiary, and sponsored a Ford dealership near the Navajo Nation. In *Neptune Leasing, Inc.*, the Court found personal jurisdiction was appropriate where Mountain States occupied a business site leasehold on trust land, the Nation allegedly verbally approved the sale of the lease from Mountain States to Nacogdoches, and the new owner Nacogdoches paid applicable rents and royalties to the Nation pursuant to a written oil and gas operating agreement with the Nation.

In this case, there is no evidence of contacts even remotely near these levels of interaction. Fresenius only delivered formaldehyde to DaVita at Chinle, Arizona and has not done so since 2002. Exhibit 2 at 29. Fresenius did not employ Mr. Lee or have any control over his employment. *Id.* Nor did Fresenius own, operate, or control the DaVita entities or any clinics located on the Navajo Nation reservation. Exhibit 2 at 28. Fresenius had no knowledge that the formaldehyde was being used on the Navajo Nation reservation. Exhibit 2 at 28-29. Fresenius simply lacks sufficient minimum contacts with the Navajo Nation reservation to satisfy the personal jurisdiction standard.

Mr. Lee has broadly claimed that "wherever Fresenius [USA] sells its products, it may be subject to a product liability action because of each jurisdiction's interest in protecting its citizens from dangerous or defective products." Exhibit 3 at 35. The District Court made a similar "bootstrapping" assertion, explaining that the delivery of formaldehyde and the contract between Fresenius and DaVita (who did business on the Navajo Nation) demonstrated Fresenius had sufficient minimum contacts with the Navajo Nation for personal jurisdiction. Exhibit 6 at

113. However, the Navajo Supreme Court has already rejected such a broad assertion of jurisdiction in *Nelson,* the very decision Mr. Lee and the Court relied upon. The *Nelson* Court addressed the concern that "all product liability torts, in fact all litigation, would be subject to tribal court jurisdiction if the injury occurred on Indian land - - and solely because it occurred on Indian land." 8 Nav. R. at 377. In responding to this concern, the *Nelson* Court held that its ruling "does not mean our courts may hear any case with some impact on tribal members. Personal jurisdiction over the defendant is still required." *Id.* Without sufficient contacts, the Navajo courts lack personal jurisdiction under Navajo law.

2.   <u>Petitioner Fresenius Does Not Have Sufficient Contacts with the Navajo Nation to Create Personal Jurisdiction Under Federal Law.</u>

Under federal law, personal jurisdiction is generally proper if allowed by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). As already discussed, the Navajo long-arm statute does not allow for personal jurisdiction over Petitioner Fresenius. However, even if the Court ruled otherwise, exercising personal jurisdiction in this case would violate Fresenius's federal due process right.

An exercise of personal jurisdiction is consistent with federal due process if a defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (1945) (internal quotes omitted). Minimum contacts with the forum ensure that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

As discussed above, Fresenius does not have sufficient minimum contacts with the Navajo Nation to create personal jurisdiction. Under federal law, when analyzing due process for "products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *J. McIntyre*

*Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). To meet this standard, the defendant must "purposefully avail" itself of the privilege of acting within the jurisdiction, which invokes both the benefits and protections of the jurisdiction's laws. *Id.* In the case of distribution of a product, the defendant's "transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.*; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.").

It would "offend traditional notions of fair play and substantial justice" and violate due process to assert jurisdiction over Petitioner Fresenius when it has not purposefully availed itself of the privilege of conducting business in or with the Navajo Nation. Fresenius did not purposefully target the Chinle Dialysis facility or any specific location in the Navajo Nation for the sale and delivery of formaldehyde. Petitioner was merely delivering formaldehyde pursuant to a master agreement for DaVita clinics nationwide. Exhibit 2 at 28. Even when Fresenius negotiated its arrangement with DaVita, to the best of its knowledge, it was never informed that any of the clinics were located on Navajo Nation lands. *Id.* None of the address labels for any of the invoices or shipping information indicated that Chinle, Arizona was located within the Navajo Nation reservation. Exhibit 2 at 29. Fresenius's simple act of placing formaldehyde into the stream of commerce cannot subject the company to the jurisdiction of the Navajo Nation courts. An assertion of jurisdiction under these circumstances is unreasonable and would be violative of due process under Navajo and federal law.

**RELIEF SOUGHT**

This Court should grant the writ of prohibition and bar the Chinle District Court from asserting jurisdiction over Mr. Lee's claims against Fresenius. As demonstrated above, the Chinle District Court lacks both personal and subject matter jurisdiction, and therefore, a writ of prohibition is proper. *McCabe v. Walters*, 5 Nav. R. 43, 47 (Nav. Ct. App. 1985) (a writ of prohibition is proper where a trial court lacks jurisdiction).

RESPECTFULLY SUBMITTED this 18th day of March, 2015.

SNELL & WILMER, L.L.P.

By _____

John F. Lomax, Jr.
Robert Feinberg (admitted *pro hac vice*)
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
*Attorneys for Petitioner Fresenius*

16

## CERTIFICATE OF SERVICE

Petitioner/Defendant hereby certifies that the above *Writ of Prohibition* was filed this 20th day of March 2015 with the Supreme Court of the Navajo Nation, 2689 Window Rock Boulevard, Window Rock, Arizona 86515, and a COPY was mailed to the Honorable Rudy Bedonie, District Court Judge, Chinle District Court, P.O. Box 547, Hwy 191 & NR 7, Chinle, Arizona 86503; Paul D. Barber and Forrest G. Buffington, c/o Barber & Borg LLC, P.O. Box 30745, Albuquerque, New Mexico 87190; Brett R. Rigg c/o The Rigg Law Firm, 377 E. White Mountain Blvd., Pinetop, Arizona 85935; and Carol Romano and Kelli K. Williams c/o Renaud, Cook, Drury, Mesaros, PA, One N. Central, Suite 900, Phoenix, Arizona 85004.

21182608

Andrea Snitgoushi

17

Exhibit D

No. SC-CV-11-15

## NAVAJO NATION SUPREME COURT

Fresenius U.S.A. Manufacturing, Inc.,
Petitioner,

v.

Chinle District Court,
Respondent,

And

Marcello S. Lee
and
Davita Healthcare Partners, Inc., Total Renal Care Holding, Inc.,
Southwest Kidney-Davita Dialysis Partners, LLC, Total Renal Care, Inc.,
and Chinle Dialysis,
Real Parties in Interest.

## ORDER DENYING PETITION FOR WRIT OF PROHIBITION

Before SLOAN, A., Chief Justice, SHIRLEY, E., Associate Justice, and BLACK, I., Associate Justice by Designation.

An original action for writ of prohibition against Chinle District Court concerning Cause No. CH-CV-133-13, the Honorable Rudy I. Bedonie, presiding.

Joshua Montagnini, Gallup, New Mexico, and John F. Lomax, Jr. and Robert Feinberg, Phoenix, Arizona, for Petitioner; Jordan Hale, Chinle, Navajo Nation, for Respondent; Paul D. Barber and Forrest G. Buffington, Albuquerque, New Mexico, for Real Party in Interest Marcello S. Lee; Brent R. Rigg, Pinetop, Arizona, and Kelli K. Williams, Phoenix, Arizona, for Real Party in Interest Davita.

This matter comes before the Court on a Petition for Writ of Prohibition. Based on the petition and exhibits, the Court is of the opinion the petition should be summarily denied pursuant to Rule 26(c) of the Navajo Rules of Civil Appellate Procedure. After a hearing to address jurisdictional arguments raised in Petitioner's Motion to Dismiss, the Chinle District Court determined it had jurisdiction and denied the motion with detailed reasons on March 12, 2015. We

are not persuaded that the Petitioner is entitled to relief as requested because the record does not provide us sufficient detail to fully address the questions. Perhaps a progress into the merits of the case by the Trial Court may yet provide appropriate justification to address the issues raised, should appellate review occur.  Petitioner has preserved its jurisdictional objections and arguments, and has an adequate remedy at law by way of an appeal. In support of our decision, we previously clarified that an original action concerning an extraordinary writ is not a substitute for an appeal. *See Hurley v. To'hajiillee Family Court*, 8 Nav. R. 705, 708 n.1 (Nav. Sup. Ct. 2005).

The Court hereby DENIES Petitioner's petition for writ of prohibition.

Dated this 15ᵗʰ day of November, 2016.

_____
Chief Justice

_____
Associate Justice

_____
Associate Justice