John F. Lomax (#20224)
Robert H. Feinberg (#015059)
Andrew Sniegowski (#031664)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: jlomax@swlaw.com
    rfeinberg@swlaw.com
    asniegowski@swlaw.com
*Attorneys for Plaintiff Fresenius*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fresenius U.S.A. Manufacturing, Inc.,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>Marcello S. Lee; Honorable Malcolm Begay, in his official capacity as District Court Judge in Navajo Nation District Court; Honorable Rudy Bedonie, in his official capacity as District Court Judge in the Navajo Nation District Court; Honorable Cynthia Thompson, in her official capacity as District Court Judge in the Navajo Nation District Court; and Valerie Descheny, in her official capacity as Clerk of the Court of Navajo Nation for the District of Chinle,<br>　　　　　Defendants. | No. 3:17-cv-08012-DMF<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Oral Argument and Expedited Hearing Requested)** |

25439019

Pursuant to Rule 65, Federal Rules of Civil Procedure, Fresenius U.S.A. Manufacturing, Inc. ("Fresenius") hereby moves the Court for a preliminary injunction as detailed below.

## MOTION FOR PRELIMINARY INJUNCTION

For over two years, Fresenius has been subjected to the jurisdiction of the Navajo Nation – a forum in which Fresenius has no presence, does no business, and has not consented to the courts' jurisdiction. The Navajo Nation trial court has now scheduled a two-week jury trial to begin on March 27, 2017 and ordered Fresenius to appear. Fresenius has exhausted its tribal court jurisdictional remedies and now seeks a declaration that it is not subject to the jurisdiction of the Navajo Nation courts.

Accordingly, Fresenius moves the Court to grant a preliminary injunction in Fresenius' favor, enjoining Defendants Begay, Bedonie, Thompson, and Descheny (collectively, "Tribal Defendants") from proceeding in excess of their jurisdiction and contrary to law, and to restrain Defendant Lee from proceeding with his action against Fresenius under the jurisdiction of the Navajo Nation courts. The preliminary injunction will protect Fresenius from unlawful and unauthorized assertions of the tribal court's jurisdiction until this Court makes a final determination of this action on the two jurisdictional issues. This Motion is supported by the following Memorandum of Points and Authorities and by the Verified Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Fresenius filed this action to obtain a declaration that it is not subject to the jurisdiction of the Navajo Nation courts. The tribal court lawsuit arises out of Defendant Lee's claim that he developed multiple myeloma as a result of exposure to formaldehyde at a facility owned and operated by DaVita – a company unrelated to Fresenius – in Chinle, Arizona. Lee worked for DaVita but named Fresenius as a co-defendant in his tribal court action alleging that it supplied the formaldehyde to DaVita. But Fresenius has insufficient contacts with the Navajo Nation and Lee for the tribal court to establish

25439019

1  personal jurisdiction over it or subject matter jurisdiction over the claims against
2  Fresenius.

3  Fresenius is a Delaware corporation that is headquartered in Massachusetts. It has never employed anyone in the Navajo Nation, has never contracted with the Navajo Nation, and has never been licensed to do business in the Navajo Nation. In fact, aside from 1999 to 2002, when Fresenius shipped products to a DaVita, Inc. facility in Chinle, Arizona, Fresenius has never had any contact with the Navajo Nation.

The Tribal Defendants' continued exercise of jurisdiction over Fresenius in excess of their lawful authority is an ongoing violation of federal law and does not comport with constitutional notions of due process. Fresenius has exhausted all tribal court remedies as to the jurisdictional issues. A preliminary injunction should be issued until the jurisdictional issue is resolved by this Court. Specifically, Fresenius requests a preliminary injunction prohibiting Defendants from commencing, prosecuting, maintaining or considering any tribal proceedings against Fresenius and/or Fresenius' officers and related companies.

## II. **FACTUAL BACKGROUND**

Defendant Lee filed his complaint on September 24, 2013 and his first amended complaint on February 4, 2014, in the Navajo Nation court against Fresenius and his former employer, DaVita Healthcare Partners, Inc.[1] *See* First Amended Compl., attached as Exhibit 1. In that lawsuit, Lee alleges that he suffered injuries at work, where he used chemicals, including formaldehyde, to disinfect equipment at DaVita's dialysis facility in Chinle, Arizona. *See id.* Lee's complaint incorrectly alleges that Fresenius manufactured and sold the formaldehyde used at Chinle Dialysis, where he worked, and asserts claims against all of the named defendants for negligence, strict liability, and under Navajo

---

[1] Lee's original complaint also named Total Renal Care Holding, Inc., Southwest Kidney-DaVita Dialysis Partners, LLC, Total Renal Care, Inc., Fresenius U.S.A., Inc., Fresenius Securities, Inc., Fresenius Health Partners Care Systems, Inc., Fresenius Medical Care Holdings, Inc., Fresenius U.S.A. Sales, Inc., and Chinle Dialysis as defendants. *See* Ex. 1. All of the Fresenius entities, aside from Fresenius U.S.A. Manufacturing, Inc., were subsequently dismissed. *See* Ex. B to Compl. at 4.

25439019

common law. *See id.* at ¶¶ 29-44. But as detailed below, Fresenius does not have a sufficient relationship or contacts with either the Navajo Nation or with Lee to establish personal or subject matter jurisdiction.

Because it lacks contacts with the Navajo Nation or with Lee, Fresenius filed a motion to dismiss on January 30, 2014. *See* Fresenius' Motion to Dismiss, attached as Exhibit 2. On March 12, 2015, without considering the uncontroverted facts, and without any meaningful consideration of applicable federal law, the Navajo trial court denied Fresenius' motion. Order at 2, attached to Complaint as Exhibit B. In its decision, the court stated that it "hoped that witnesses would be called" during the hearing on the purely legal issue. *See id.* The court, however, did not order the parties to produce witnesses or otherwise further develop the facts.

Indeed, it was unnecessary for Fresenius to present any further facts. It is undisputed that, as explained below, Fresenius has no contact with Lee and virtually no contact with the Navajo Nation. Once Fresenius challenged the court's jurisdiction, it was incumbent on Lee to establish jurisdiction, and for the court to consider whether it has jurisdiction under all relevant laws. *See Nicholson Trust v. Chavez*, 8 Nav. R. 417, 424 (Nav. Sup. Ct. 2004). On this point, Navajo courts are no different from federal district courts: plaintiffs have the burden of establishing jurisdiction. *See id; Doe BF v. Diocese of Gallup*, 10 Am. Tribal Law 72, 80 (Nav. Sup. Ct. 2011). Lee never met this burden. Nonetheless, the court denied the motion without further proceedings. *See* Ex. B to Compl.

On March 18, 2015, Fresenius filed a Petition for Writ of Prohibition in the Navajo Nation Supreme Court. *See* Petition, attached to Compl. as Ex. C. This is an extraordinary writ and the only vehicle available for jurisdictional reviews as there are no interlocutory appeals in the Navajo judicial system. *See* Rule 26, Navajo Rules of Civil Appellate Procedure; *see also* 7 N.N.C. § 303. On November 15, 2016, in a five-sentence decision, the Navajo Nation Supreme Court denied Fresenius' Petition for Writ of Prohibition. *See* Ex. D to Compl. On November 18, 2016, Defendant Descheny issued a

25439019

Notice of Jury Trial, scheduling trial to begin on March 27, 2017. *See* Notice of Hearing, attached as Exhibit 3.

Fresenius brought this action against Defendant Lee and against the Tribal Defendants in their official capacities, seeking an injunction against the unlawful exercise of jurisdiction over Fresenius in the Navajo Nation court.

### III. APPLICABLE LAW

#### A. Federal Law

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also Nelson v. Pfizer, Inc.*, 4 Am. Tribal Law 680, 682 (Nav. Sup. Ct. 2003) ("[Navajo] courts, like other courts, must have both subject matter jurisdiction and personal jurisdiction to properly hear a case."). As explained in greater detail below, the continued exercise of jurisdiction over Fresenius constitutes an ongoing violation of federal law and Fresenius' constitutional right to due process because the Navajo Nation courts lack personal jurisdiction over Fresenius and subject matter jurisdiction over the claims against it.

Fresenius seeks relief from this Court because "federal courts are the final arbiters of federal law, and the question of tribal court jurisdiction is a federal question." *FMC v. Shoshone-Bannock Tribes*, 905 F.2d 1311, 1314 (9th Cir. 1990); *see also Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 952 (9th Cir. 2004) *cert. denied* 543 U.S. 1054 (2005) ("Whether a tribal court may assert jurisdiction over non-Natives is certainly a question of federal law . . . ."). The extent of tribal court jurisdiction over non-members is a matter of federal common law. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985) ("§ 1331 encompasses the federal question whether a tribal court has exceeded the lawful limits of its jurisdiction.").

#### B. Fresenius Has Exhausted Its Tribal Remedies.

As a matter of comity, federal courts generally require that tribal court remedies be

25439019

exhausted prior to seeking relief from the federal court regarding jurisdiction. *See, e.g.*, *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1134 (9th Cir. 1995). Once the highest tribal court has the opportunity to consider the issue, the exhaustion requirement has been met. *Id.* The Ninth Circuit has held that "if the tribal appellate court has a discretionary interlocutory appeals process, that is sufficient for purposes of exhaustion." *Elliot v. White Mountain Apache Tribal Ct.*, 566 F.3d 842, 847 n.4 (9th Cir. 2009); *see also Ford Motor Co. v. Todecheene*, 488 F.3d 1215, 1217 (9th Cir. 2007) (ruling that the denial of a request for discretionary review on jurisdictional grounds will satisfy the obligation to exhaust tribal remedies).

The Navajo Nation Supreme Court had the opportunity to address the jurisdictional issues in this case when Fresenius filed a Petition for Writ of Prohibition, which is a discretionary interlocutory appeal. The Navajo Nation Supreme Court considered and denied the Petition, exhausting Fresenius' tribal remedies.

### C. The Tribal Defendants Are Proper Parties Under *Ex Parte Young*.

The *Ex Parte Young* "doctrine permits actions for prospective non-monetary relief against state or tribal officials in their official capacity to enjoin them from violating federal law, without the presence of the immune State or tribe." *Salt River Project Agr. Imp. And Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012) (*citing Ex Parte Young*, 209 U.S. 123 (1908).[2] "*Ex Parte Young* is not limited to claims that officials are violating the federal Constitution or federal statute; it applies to federal common law as well." *Salt River Project*, 672 F.3d at 1182.

The extent of the Tribal Defendants' jurisdiction is a constitutional issue and a matter of federal common law. Therefore, Fresenius has named the Tribal Defendants in their official capacities and seeks an order enjoining them from unlawfully exercising jurisdiction over Fresenius.

---

[2] *See also Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) ("tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law."); *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1133-34 (9th Cir. 1995) (same).

### D. Personal Jurisdiction

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

#### 1. *Navajo Long-Arm Statute*

The Navajo long-arm statute states in pertinent part:

> A Court of the Navajo Nation may exercise personal and subject matter jurisdiction over any non-member who consents to jurisdiction by commercial dealings, residence, employment, written or implied consent, or any action or inaction which causes injury which affects the health, welfare, or safety of the Navajo Nation or any of its members located within the territorial jurisdiction of the Navajo Nation, or any other act which constitutes the assumption of tribal relations and the resulting express or implied consent to jurisdiction. A Court of the Navajo Nation may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action for relief arising from the person's: (1) Transacting business in the Navajo Nation; (2) Contracting at any place to supply services or things within the Navajo Nation; (3) Causing tortious injury by any act or omission within the Navajo Nation; (4) Causing tortious injury in the Navajo Nation by an act or omission outside the Navajo Nation if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Navajo Nation . . . . (9) any action or inaction outside this jurisdiction which causes actual injury or damage within the Navajo Nation, where such injury or damage was reasonably foreseeable.

7 N.N.C. § 253a(C).

This statute does not necessarily establish Navajo civil jurisdiction over other non-members. *Ford Motor Co. v. Kayenta Dist. Ct.*, Nav. SC-CV-33-07 at *9, n.5 (Nav. Sup. Ct. Sept. 9, 2011). Instead, the Navajo long-arm statute was enacted to provide the Navajo Nation courts with jurisdiction over cases in which the non-member defendant had engaged in direct business transactions with the Navajo Nation (such as financing a fleet of vehicles for the police department in *Ford*), or provided a large number of products to a significant portion of the population (such as the diabetes medication in *Nelson v. Pfizer*). *Ford Motor Co. v. Kayenta Dist. Ct.*, at *9.

## 2. *Due Process*

A forum's long-arm statute can only be applied to the extent it complies with constitutional due process. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412 (1984). "The [14th Amendment's] Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Corporations are entitled to the same protection. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) ("the Due Process Clause does not contemplate that a state may make binding a judgment *in personam* against an individual *or corporate defendant* with which the state has no contacts, ties, or relations.") (emphasis added).

A court's assertion of personal jurisdiction is consistent with due process where the party has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Helicopteros*, 466 U.S. at 414. Minimum contacts with the forum ensure that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

When analyzing the exercise of jurisdiction in "products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 476.

To meet this standard, the defendant must "purposefully avail" itself of the privilege of acting within the jurisdiction, invoking the benefits and protections of the jurisdiction's laws. *J. McIntyre Mach., Ltd.*, 564 U.S. at 880. In the case of distribution of a product, such as the formaldehyde distributed by Fresenius, the defendant's

"transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods would reach the forum State." *Id. See also Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 112 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.").

### E. Subject Matter Jurisdiction

"Tribal courts are not [] courts of general jurisdiction . . . ." *Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc.*, 569 F.3d 932, 938 (9th Cir. 2009); *see also Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 649-50 (2001)("Tribal jurisdiction is limited . . . . In *Montana* . . .we observed that Indian tribe power over nonmembers on non-Indian fee land is sharply circumscribed.") (referring to *Montana v. United States*, 450 U.S. 544 (1981)).

The United States Supreme Court's decision in *Montana* and its progeny demonstrate that Fresenius is likely to prevail on the merits of its federal claim. *See Montana*, 450 U.S. 544. In *Montana*, the Supreme Court stated that "through their original incorporation into the United States as well as through specific treaties and statutes, Indian tribes have lost many of the attributes of sovereignty." *Montana*, 450 U.S. at 563. The Court "concluded that the inherent sovereignty of Indian tribes was limited to 'their members and their territory': [and] 'Exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes.'" *Atkinson*, 532 U.S. at 650-51 (*quoting Montana*, 490 U.S. at 564.).

Under the analytical framework set forth in *Montana* and subsequent decisions, the general rule is that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. at 565. This general rule has two narrow exceptions:

[1] A tribe may regulate, through taxation, licensing, or other means, the

activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. [2] A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Id.* at 565-66 (internal citations omitted).

### F. Preliminary Injunction Standard

Fresenius is entitled to a preliminary injunction if "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1020 (9th Cir. 2016) (*citing Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).). These elements are analyzed on a sliding scale. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Therefore, "a preliminary injunction is also appropriate when a plaintiff raises serious questions as to the merits and the balance of hardships tips sharply in plaintiff's favor." *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103, n.4 (9th Cir. 2016)(internal quotation omitted).

## IV. ARGUMENT

With respect to Fresenius, the Navajo Nation courts have neither personal nor subject matter jurisdiction. The only allegation to support either personal or subject matter jurisdiction over Lee's claims against Fresenius is that Fresenius delivered formaldehyde to DaVita at DaVita's Chinle Dialysis facility. This conduct is insufficient to subject Fresenius to the jurisdiction of the Navajo Nation courts. The Court should enjoin the Tribal Defendants from continuing to unlawfully assert jurisdiction in ongoing violation of federal law and Fresenius' due process rights.

### A. Fresenius Lacks Sufficient Contacts With the Navajo Nation.

Fresenius does not have a physical presence in the Navajo Nation. Fresenius is a Delaware corporation based in Massachusetts which distributes various products,

- 9 -

25439019

including formaldehyde. Decl. of Paul Colantonio at ¶ 5, attached to Compl. as Ex. A. Fresenius is not registered to do business in the Navajo Nation. *Id.* at ¶ 12. Fresenius does not own, lease, operate, or control any facility or business of any kind that is located on the Navajo Nation. *Id.* at ¶ 13.

Nor does Fresenius have a relationship with the Navajo Nation. Fresenius has not consented to the jurisdiction of the Navajo Nation. *Id.* at ¶ 10. Fresenius has no contracts, commercial dealings, leases, or other consensual relationships with the Navajo Nation. *Id.* at ¶ 11. Fresenius has never sold any products to the Navajo Nation. *Id.* at ¶ 16.

Fresenius also does not have any relationship with Defendant Lee – the Plaintiff in the Navajo lawsuit. Fresenius does not own, lease, operate, or control any facilities or businesses in Chinle, Arizona, including Lee's former place of employment. *Id.* at ¶¶ 14, 18. Fresenius neither employed, nor had any control over Lee's employment. *Id.* at ¶ 30. Fresenius also did not provide any renal services in Chinle, Arizona. *Id.* at ¶ 15.

None of the foregoing is in dispute. Indeed, Defendant Lee never offered any facts to rebut any of the foregoing.

**B.     Fresenius Sold Formaldehyde to DaVita, Inc. from 1999 to 2002.**

Fresenius' only contact with any of the allegations underlying Lee's complaint in the Navajo Nation was its sale of formaldehyde to DaVita, Inc., a California corporation. On or about August 30, 1999, Fresenius entered into a Supply Agreement with Total Renal Care, Inc., a predecessor of DaVita, Inc. *Id.* at ¶ 19. Pursuant to the Supply Agreement, Fresenius agreed to sell certain dialysis supplies to Total Renal Care, Inc., now known as DaVita, Inc. *Id.* at ¶ 20. DaVita is a separate company from Fresenius. *Id.* at ¶ 18. Neither Fresenius, nor any of Fresenius' affiliated companies own, operate, or control any of the DaVita entities that were named as defendants in Lee's lawsuit. *Id.*

Between 1999 and 2002, Fresenius sold products to DaVita and shipped those products to a DaVita facility in Chinle, Arizona. *Id.* at ¶ 24. Fresenius stopped selling or delivering any products to DaVita, Inc. at the Chinle Dialysis facility in 2002, and has not sold or delivered any products to Chinle, Arizona since that time. *Id.* at ¶ 29.

## C. Fresenius Is Likely to Succeed on the Merits Because the Navajo Nation Courts Lack Personal Jurisdiction Over It.

### 1. *The Navajo Long-Arm Statute Does Not Apply to Fresenius.*

As pointed out in Fresenius' Petition for Writ of Prohibition, the plain language of the Navajo long-arm statute does not permit jurisdiction here. *See* 7 N.N.C. § 253a(C); Compl. Ex. C at 12. That statute allows the Navajo Nation courts to maintain personal jurisdiction over a person as to a cause of action for relief arising from, among other events, that person's business in the Navajo Nation, contracting to supply services or things within the Navajo Nation, or any action or inaction outside the jurisdiction which causes reasonably foreseeable injury or damage within the Navajo Nation. *See* 7 N.N.C. § 253a(C).

While Fresenius did not do business with the Navajo Nation, it did agree to "supply things" to DaVita that, unbeknownst to Fresenius, ultimately entered the Navajo Nation. Thus, the first portion of the statute may arguably apply to Fresenius. The agreement and shipment, however, were made outside the Navajo Nation jurisdiction, and it was not "reasonably foreseeable" that harm would result from these actions, as required under the long-arm statute.

Fresenius could not have foreseen any alleged injury to Lee resulting from his work at the dialysis facility. Fresenius merely shipped a legal product that is safe when used and handled appropriately. Fresenius had no control or even knowledge of Lee's employment or working conditions. As a result, the Navajo long-arm statute does not provide the Tribal Defendants with personal jurisdiction over Fresenius.

### 2. *Fresenius Does Not Have Sufficient Minimum Contacts with the Navajo Nation to Create Personal Jurisdiction.*

Even if the long-arm statute applied to Fresenius, personal jurisdiction over it is still lacking. The Constitutional standard requires that a defendant have sufficient minimum contacts with a forum to establish jurisdiction. Fresenius' <u>only</u> contact with the Navajo Nation is a three-year period of shipping formaldehyde to a California company's

Chinle, Arizona facility. As a result, even if the Navajo long-arm statute was broad enough to apply to Fresenius, it would "offend traditional notions of fair play and substantial justice" and violate due process for the Navajo Nation courts to assert jurisdiction over Fresenius, as Fresenius has not purposefully availed itself of the privilege of conducting business in or with the Navajo Nation. *See Helicopteros*, 466 U.S. at 414.

Fresenius' mere act of placing formaldehyde into the stream of commerce cannot subject it to the jurisdiction of the Navajo Nation courts. *See Asahi Metal Indus. Co.*, 480 U.S. at 112. Fresenius did not purposefully avail itself of the benefits and protections of the laws of the Navajo Nation. *See J. McIntyre Mach., Ltd.*, 564 U.S. at 880. Fresenius also did not target the Chinle Dialysis facility or any location in the Navajo Nation for the sale and delivery of its products. *See* Compl. Ex. A.

In fact, Fresenius never went to the Navajo Nation or conducted any business there. *See id.* At most, Fresenius' products ended up in the Navajo Nation due to the activities of third parties when Total Renal Care, Inc. (and later DaVita) entered the master service agreement in California, then directed Fresenius to ship products to a facility in Chinle, Arizona, without notifying Fresenius that the facility was located in the Navajo Nation. Fresenius was never aware that the Chinle Dialysis clinic was located in the Navajo Nation. *Id.* at ¶ 28. Fresenius merely delivered formaldehyde pursuant to a master agreement to supply DaVita clinics nationwide. *Id.* None of the address labels or any invoices or shipping information indicated that Chinle, Arizona was located within the Navajo Nation. *Id.* at ¶ 29. The exercise of jurisdiction, under these undisputed facts, would be unreasonable and would violate Fresenius' constitutional right to due process.

### D. Fresenius Is Likely to Succeed on the Merits Because the Navajo Nation Courts Lack Subject Matter Jurisdiction.

"[I]n this circuit, the *Montana* analysis is controlling in tribal jurisdiction cases . . . ." *King Mountain*, 569 F.3d at 941. Absent one of the two exceptions, under *Montana* tribal courts do not have subject matter jurisdiction over non-Indian defendants in civil matters. Here, neither *Montana* exception allows the Tribal Defendants to exercise

jurisdiction over the claims against Fresenius.

   1.   *The First* Montana *Exception Does Not Apply.*

Application of the first exception requires the non-member entity, such as Fresenius, to have entered into a consensual relationship with the tribe or its members. *Montana*, 450 U.S. at 565. In addition, *Montana*'s first exception is limited by the requirement "that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself." *Atkinson*, 532 U.S. at 645.

It is uncontroverted that Fresenius never had any relationship with the tribe or any of its members. *See* Compl. Ex. A. As noted above, Fresenius' only relationship with any party involved in the tribal court litigation was its supply agreement with DaVita, which is based in California and is also a non-member. *See id.* Fresenius is not an Indian or Navajo-owned entity. As such, it is a non-Indian defendant. In denying Fresenius' motion to dismiss, the tribal trial court seemed to rely, at least in part on the status of the land where DaVita was located. *See* Compl. Ex. B at 2. But "[i]t is the membership status of the unconsenting party, not the status of real property, that counts as the primary jurisdictional fact." *Nevada v. Hicks*, 533 U.S. 353, 382 (2001)(Souter, J., concurring).

In the tribal court, Lee attempted to bootstrap Fresenius' relationship with DaVita to show that Fresenius therefore had a relationship with the Navajo Nation, but that is a bridge too far. Fresenius' relationship with nonmember DaVita and shipment of legal products to DaVita's facility does not create a relationship with the Navajo Nation or with Lee. Compl. Ex. A at ¶ 29. Even if Fresenius' relationship with DaVita was sufficient to allow the Navajo Nation courts to exercise jurisdiction in some circumstances, which it is not, Fresenius would still not have the requisite contact with Lee or the Navajo Nation for jurisdiction over Lee's lawsuit. "A nonmember's consensual relationship in one area . . . does not trigger tribal civil authority in another – it is not 'in for a penny, in for a Pound.'" *Atkinson*, 532 U.S. at 656 (internal citation omitted); *see also Strate v. A-1 Contractors*, 520 U.S. 438, 456-57 (1997) (tribal court lacked subject matter jurisdiction over claims against defendant engaged in subcontract work for tribes on the reservation when plaintiff

"was not a party to the subcontract, and the Tribes were strangers to the accident.").

Fresenius has not consented to the jurisdiction of the Navajo Nation courts; does not have any contracts or other commercial dealings with the Navajo Nation; and does not own, operate, lease, or control any businesses on the Navajo Nation. *Id.* at ¶ 27-28. Accordingly, Fresenius does not have the requisite relationship with the Navajo Nation to trigger jurisdiction under *Montana*'s first exception.

### 2. *The Second* Montana *Exception Does Not Apply.*

The second exception to the *Montana* rule is similarly inapplicable. Clarifying the limited scope of the second exception, the Supreme Court has explained:

> the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: 'Indian tribes retain inherent power to punish tribal offenders, to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. But a tribe's inherent power does not reach beyond what is necessary to protect tribal self-government or to control internal relations.

*Strate*, 520 U.S. at 459.

The second exception only "concerns activity that directly affects the Tribe's political integrity, economic security, health, or welfare." *Id.* at 446. Accordingly, the non-member's alleged conduct "must do more than injure the tribe[;] it must 'imperil the subsistence' of the tribal community." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 341 (2008); *see also Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1065 (9th Cir. 1999) ("nonmember's impact must be demonstrably serious.").

The only allegation against Fresenius is that a single tribal member (Defendant Lee) was somehow injured by working with formaldehyde Fresenius shipped. *See* Ex. 1. "To some extent, it can be argued that torts committed by or against Indians on Indian land always threaten or have some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *King Mountain*, 569 F.3d at 944. This appears to be Lee's position. *See* Ex. 1 at 2. "But this is not what the second *Montana* exception is intended to capture. Rather, the second exception envisions situations where

the conduct of the nonmember poses a direct threat to tribal sovereignty." *King Mountain*, 569 F.3d at 944.

Accordingly, an alleged injury to a single tribe member is not sufficient to trigger the second exception. *See Strate*, 520 U.S. at 458 ("But if *Montana's* second exception requires no more [than jeopardizing the safety of tribe members], the exception would severely shrink the rule."). Because "the possibility of injuring multiple tribal members does not satisfy the second *Montana* exception under *Strate*, then, perforce, [a plaintiff's] status as a tribal member alone cannot." *Burlington N. R.R. Co.*, 196 F.3d at 1065 (internal citation omitted). *See also Cnty. of Lewis v. Allen*, 163 F.3d 509, 515 (9th Cir. 1998) (tribe's interest in the safety of its members does not satisfy the second exception).

Likewise, requiring Fresenius to defend against Defendant Lee's allegation of a single harm "in an unfamiliar court" is "not necessary to protect tribal self-government . . . [and] is not crucial to 'the political integrity, the economic security, or the health or welfare of the [Navajo Nation]." *Strate*, 520 U.S. at 458 (*quoting Montana*, 450 U.S. at 566.). Therefore, the second exception to the *Montana* rule does not apply.

Accordingly, Fresenius has a strong likelihood of success on the merits of this case because the Navajo Nation courts lack civil jurisdiction over it.

### E. Fresenius Will Suffer Irreparable Harm if Defendants Are Not Enjoined.

"Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008). "The Ninth Circuit has stated that 'an alleged constitutional infringement will alone constitute irreparable harm.'" *Collins v. Brewer*, 727 F.Supp.2d 797, 812 (D. Ariz. 2010) (*quoting Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).). Because the Navajo Nation courts lack jurisdiction over Fresenius, any order for Fresenius to appear and defend in that forum violates Fresenius' due process rights and constitutes irreparable harm. *See J. McIntyre Mach., Ltd.*, 564 U.S. at 879-80; *Collins*, 727 F.Supp.2d at 812.

Moreover, "[s]ince there is no avenue of appeal or other recourse to another forum from the Tribal Courts, [Fresenius] would effectively be denied the opportunity to avoid the overreaching tribal jurisdiction if this Court were to deny the request for an injunction." *UNC Res., Inc. v. Benally*, 518 F. Supp. 1046, 1053 (D. Ariz. 1981) (finding irreparable injury in being forced to appear and defend in tribal court); *see also Kerr-McGee Corp. v. Farley*, 88 F.Supp.2d 1219, 1233 (D.N.M. 2000) (finding irreparable harm in being forced to litigate in Navajo Court that lacked jurisdiction). Jurisdiction should not be exercised "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478.

Fresenius would be at a severe disadvantage if forced to litigate in the Navajo Nation court. For example, Defendant Lee's only evidence that his injuries were caused by formaldehyde comes from a traditional medicine man who admitted during his deposition that he does not know what formaldehyde is and had never heard of multiple myeloma. *See* Motion for Summary Judgment, attached as Exhibit 4; Motion to Exclude Testimony, attached as Exhibit 5. Despite these admissions and a lack of any other credible evidence to support his case, the Tribal Court is determined to not only allow Defendant Lee's case to move forward, but also to allow the medicine man "expert" to testify with regard to causation. *See* Order at 4-5, attached as Exhibit 6. Fresenius is at a fundamental disadvantage in attempting to defend itself in such an unfamiliar environment.

Unless enjoined, it is clear that Fresenius will be irreparably harmed by the violation of its constitutional right to due process in being forced to litigate in a tribal court that lacks both subject matter jurisdiction and personal jurisdiction. *See Nelson*, 530 F.3d at 882; *UNC Res., Inc.* 518 F. Supp. at 1053. Monetary damages are not sufficient to compensate for such constitutional violations. *See, e.g.*, *Nelson*, 530 F.3d at 882.

**F. The Balance of Equities Tips in Fresenius' Favor.**

Tribal Defendants will not be harmed by being prevented from overstepping their lawful authority in continued violation of federal law. *See Arizona Dream Act Coalition*

*v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available. On the contrary, the public interest and the balance of equities favor preventing the violation of a party's constitutional rights.") (internal citations omitted).

Fresenius, on the other hand, would be forced to defend itself in an unfamiliar court that lacks jurisdiction over it, in violation of its constitutional rights. This harm to Fresenius also outweighs any harm that may be suffered by Defendant Lee in being forced to pursue his case in the appropriate jurisdiction. *See Crowe & Dunlevy, P.C. v. Stidham*, 609 F.Supp.2d 1211, 1224 (N.D. Okla. 2009) (tribal court defendant's harm of being subject to unlawful tribal court jurisdiction outweighed plaintiff's harm of wasted time, effort, and money litigating in a court that lacked jurisdiction).

### G. The Public Interest Supports Granting the Injunction.

Granting injunctive relief here will advance the public interest in protecting parties from the unconstitutional exercise of judicial power. *See Nevada*, 533 U.S. at 384 (Souter, J., concurring) (recognizing "an overriding concern that citizens who are not tribal members be 'protected . . . from unwarranted intrusions on their personal liberty.'"). Permitting the Navajo Nation courts to exercise jurisdiction in excess of the limitations created by federal law does not promote the public interest. *Ford Motor Co.*, 221 F.Supp.2d at 1089. "Nor will the public interest be harmed by an injunction preventing defendants from participating in an unlawful exercise of tribal power." *UNC Resources, Inc. v. Benally*, 514 F. Supp. 358, 363 (D.N.M. 1981).

## V. CONCLUSION

Fresenius is entitled to the preliminary injunction against Defendants prayed for above and in the Verified Complaint to protect Fresenius from unlawful assertions of tribal jurisdiction until Fresenius obtains permanent relief through this Court's decision on the merits. Accordingly, Fresenius requests that this Court order the requested injunctive relief, together with all other and further relief the Court deems appropriate.

DATED this 25tn say of January, 2017.

SNELL & WILMER L.L.P.

By: s/ Andrew Sniegowski
John F. Lomax
Robert H. Feinberg
Andrew Sniegowski
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Plaintiff Fresenius*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 25, 2017, I electronically transmitted the attached *Plaintiff's Motion for Preliminary Injunction* to the Clerk's office using the CM/ECF System for filing.

*s/ Sandy Rosales*